UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| L.K.M., et al.<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>BETHEL SCHOOL DISTRICT, et al.<br><br>　　　　　　Defendants. | CASE NO. C18-5345 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment of Defendants Bethel School District ("the District"), Thomas Siegel, Robert Maxwell, Megan Nelson, Clifford Anderson, Tom Gifford, and Heidi Miller (collectively "Defendants"), Dkt. 39, and the parties' supplemental briefing, Dkts. 54, 56. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The Court reincorporates by reference the relevant factual and procedural background found in the underlying order. *See* Dkt. 51 at 1–10. Plaintiff C.K.M. is

ORDER - 1

intellectually disabled and was enrolled as a special education student in the District at Bethel High School. Dkt 1-2, ¶ 3.1. Her mother and father, Plaintiffs L.K.M. and J.M. ("Parent Plaintiffs"), bring suit against Defendants individually and on behalf of C.K.M. Plaintiffs allege that C.K.M. was sexually assaulted and harassed by another special education student ("David M.") during the 2012–2013 school year. *Id.* ¶¶ 3.5, 3.17. Plaintiffs assert that Defendants knew that David M. had an extensive history of sexual assaults against other special needs students and that Defendants failed to protect C.K.M. from the known risk of harm. *Id.* ¶ 3.31.

On July 17, 2020, Defendants filed an amended motion for summary judgment. Dkt. 39. The Court granted the motion in part, denied it in part, and reserved ruling in part. Dkt. 51. In the underlying order, the Court requested supplemental briefing on Plaintiffs' 42 U.S.C. § 1983 claims and negligence claim and Plaintiff Parents' claim for damages and individual § 1983 claim. *Id.* at 37. On January 13, 2021, Plaintiffs filed their supplemental briefing. Dkt. 54. On January 22, 2021, Defendants filed their supplemental briefing, Dkt. 56, and objections to the supplemental declaration of Plaintiffs' expert Judith Billings, Dkt. 58.

## II.  DISCUSSION

The remaining issues for Defendants' motion for summary judgment are whether C.K.M.'s constitutional rights were clearly established to preclude qualified immunity for the Individual Defendants; whether policies alleged to have violated C.K.M.'s constitutional rights can be appropriately attributed to the District to establish liability under *Monell*; whether the District proximately caused injury to C.K.M. as a result of its

alleged negligent failure to protect; whether the Plaintiff Parents' state law claim for damages is timely; and whether the Plaintiff Parents can maintain their own § 1983 claim.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.  42 U.S.C. § 1983 Claim**

Defendants argue that they are entitled to summary judgment on Plaintiffs' § 1983 claims: first, the Individual Defendants assert that they are entitled to qualified immunity, and, second, the District argues Plaintiffs cannot satisfy the legal standard set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**1.  Individual Defendants**

The Court previously concluded Plaintiffs have submitted sufficient evidence that Defendant Megan Nelson affirmatively placed C.K.M. in danger by acting with deliberate indifference to a known or obvious danger in violation of C.K.M.'s substantive due process rights. Dkt. 51 at 17–18. The Court also concluded that there is sufficient evidence from which a reasonable factfinder could conclude that Defendants Heidi Miller, Tom Gifford, and Nelson violated C.K.M.'s constitutional rights through deliberate indifference and failing to report David M.'s alleged abuse. *Id.* at 20–21. The Court reserved ruling and requested supplemental briefing on whether C.K.M.'s rights were clearly established.

"Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

### a. State-Created Danger

The question here is whether the state of the law in 2012 gave Defendant Nelson[1] fair warning that her alleged treatment of C.K.M. was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *United States v. Lanier*, 520 U.S. 259, 271 (1997). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to state actors, *Lanier*, 520 U.S. at 271, but "[t]he contours of the right must be

---

[1] Plaintiffs have moved for leave to amend their complaint to add District administrator Lori Haugen as a defendant based upon allegations similar to those against Defendant Nelson. *See* Dkt. 44. A separate order will follow based upon the discussion of qualified immunity here.

sufficiently clear that a reasonable official would understand that what [she] is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiffs cite state-created danger case law for the general proposition that a state actor would know they may not act to the contrary. *See Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006). They also cite *Patel v. Kent School District*, 648 F.3d 965 (9th Cir. 2011), to support their argument that a teacher or school administrator would understand that they may not act with deliberate indifference to a known or obvious danger in a school setting. However, in *Patel*, the Ninth Circuit did not reach the issue of clearly established law. Rather, the Circuit held that there was no constitutional violation under the plaintiff's state-created danger theory. *Id.* at 976 ("*Grubbs* makes unmistakably clear that mere negligence—or even gross negligence—is not enough for deliberate indifference. The standard is markedly higher, and we see no evidence even hinting that Wilhelm 'intend[ed] to expose' A.H. to a risk or otherwise knew 'that something [was] going to happen but ignore[d] the risk.'" (citing and quoting *L.W. v. Grubbs*, 92 F.3d 894, 898–900 (9th Cir. 1996))).

While the principle that state actors may not affirmatively act with deliberate indifference to a known or obvious danger is well established in the Ninth Circuit, Plaintiffs have not provided case law from which Defendant Nelson would have reasonably known that affirmatively removing David M. from one-on-one supervision in

violation of his IEP violated C.K.M.'s substantive due process rights. The Court does not condone Nelson's actions (indeed, the Court has concluded that at this stage Plaintiffs have established that Nelson violated C.K.M.'s constitutional rights), but Plaintiffs have not met their burden.[2] C.K.M.'s rights were not clearly established at the time of the constitutional violation, and Nelson is entitled to qualified immunity.

Summary judgment is therefore granted, the Individual Defendants are entitled to qualified immunity, and Plaintiffs' § 1983 state-created danger claim as to the Individual Defendants is dismissed with prejudice.

### b.     Failure to Report

The Court also previously concluded that there is evidence from which a jury could find that Defendants Miller, Gifford, and Nelson violated C.K.M.'s constitutional rights to bodily integrity. Dkt. 51 at 19–21. The question here is whether the state of the law in 2012 gave these three Individual Defendants fair warning that their alleged treatment of C.K.M. was unconstitutional.

Plaintiffs acknowledge that a deliberate indifference, failure-to-report case may not have been decided in the Ninth Circuit under a substantive due process theory and argue that "the known violation to C.K.M.'s Equal Protection rights reasonably requires

---

[2] Defendants additionally cite case law for the proposition that "the failure to follow a special education student's IEP has not been held to be a clearly established constitutional violation." Dkt. 56 at 15 (citing, *inter alia*, *A.T. ex rel. L.T. v. Baldo*, 798 Fed. App'x 80 (9th Cir. 2019); *Miller v. Monroe Sch. Dist.*, 159 F. Supp. 3d 1238 (W.D. Wash. 2016); *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123 (E.D. Cal. 2009)). But the cited case law is not exactly congruent with the facts here; the cases primarily involve the use of physical restraints and aversive interventions in excess of what was prescribed in the student's IEP. Regardless, it is not Defendants' burden to show an absence of clearly established law.

similarly situated defendants to take notice that their respective conduct is unlawful." Dkt. 54 at 5–6 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). While novelty of the circumstance does not preclude liability, *Hope*, 536 U.S. at 741, Plaintiffs have again not met their burden to show C.K.M.'s rights were clearly established. The Court agrees with Defendants that Plaintiffs lack closely analogous authority that would make sufficiently clear to Defendants Miller, Gifford, and Nelson that failing to report David M.'s alleged sexual harassment and assault of C.K.M. violated C.K.M.'s substantive due process rights. *See* Dkt. 56 at 20.

Summary judgment is therefore granted, the Individual Defendants are entitled to qualified immunity, and Plaintiffs' § 1983 failure to report claim as to the Individual Defendants is dismissed with prejudice

### 2. *Monell* Liability

Plaintiffs assert § 1983 claims against the District under two theories: first that the District "is liable for its execution of policies, customs and practices, as well as for its actions in failing to adequately train, monitor, or supervise its agents and employees to ensure the safety of its students" in regards to the above-discussed due process violations, Dkt. 1-2, ¶ 4.21, and second that the District "violated the Equal Protection Clause in its practice of failing to enforce its policies on peer-to-peer sexual harassment in its special education classroom at Bethel High School," *id.*, ¶ 4.31.

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil

rights; or that the entity ratified the unlawful conduct. *See Monell*, 436 U.S. at 690–91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). It is not enough that the municipality merely employed a tortfeasor. *See Monell*, 436 U.S. at 691. Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were a "moving force" behind the constitutional violation. *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 404 (1997).

A policy can be one of action or inaction. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Specific to the school district context, a policy under *Monell* "may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (citing *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)). Whether an official has final policymaking authority is a question for the court to decide based on state law. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

A municipality may be liable for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton*, 489 U.S. at 388). The custom or policy of inaction must constitute deliberate indifference, i.e., it "must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with

respect to the subject matter in question." *Id.* at 681 (citations and internal punctuation omitted). If inaction was in the form of deficient training, the plaintiff must show that the training deficiency was "closely related to the ultimate injury." *Id.* (quoting *City of Canton*, 489 U.S. at 391). "In other words, a plaintiff must show that his or her constitutional 'injury would have been avoided' had the governmental entity properly trained its employees." *Id*.

        **a.**    **Due Process**

As a threshold issue, the Court must decide as a matter of state law who has final decision-making authority for the District's policies. *See Jett*, 491 U.S. at 737. Whether Plaintiffs can sustain their due process theory for *Monell* liability—that the District violated C.K.M.'s due process rights through a policy of inaction by failing to report David M.'s ongoing sexual harassment—depends on whether the policy of inaction can be attributed to the District via an official with policymaking authority.

Final policymaking authority for schools in Washington generally rests with the school district's board of directors. *See* RCW 28A.320.015 (power of board of directors). Plaintiffs do not argue that the District's board of directors created the policy of inaction but that Superintendent Seigel and former Executive Director of Special Services Robert Maxwell were policymakers responsible for the policy of inaction. Dkt. 42 at 22–23. A plaintiff may also establish municipal liability by demonstrating that "an official policymaker . . . delegated policymaking authority to a subordinate." *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997); *see also Lytle*, 382 F.3d at 983 ("For a person to be a final policymaker, he or she must be in a position of authority such that a final decision

by that person may appropriately be attributed to the District."). The question thus becomes whether the District's board of directors delegated its policymaking authority to either Superintendent Seigel or former Director Maxwell. Determining whether final policymaking authority has been delegated "may turn on questions of fact." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 986 (9th Cir. 2002).

The District's Policy No. 3206, "Sexual Harassment Related to Students," states that the superintendent is responsible for implementing the policy. Dkt. 43 at 214–15; *see also* Dkt. 54 at 8–9. Plaintiffs further argue that Superintendent Seigel is responsible for implementing the mandatory reporting policy. Dkt. 54 at 9, 11–12. However, the District's school board appears to have delegated the policies' implementation to Superintendent Seigel's discretion. *See Christie v. Iopa*, 176 F.3d 1231, 1236–37 (9th Cir. 1999). In determining whether a municipal actor has been delegated policymaking authority or simply has discretionary decision-making authority, "courts consider whether the official's discretionary decision is 'constrained by policies not of that official's making' and whether the official's decision is 'subject to review by the municipality's authorized policymakers.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

The Court concludes that whether Superintendent Seigel was delegated policymaking authority by the School Board through designating the implementation of the policies to him turns on questions of fact. Specifically, the question is whether Superintendent Seigel was constrained by policies promulgated by the school board or whether he enjoyed unconstrained discretion, converting him into a final policymaker.

Another factual question raised is whether Superintendent Seigel's decisions were subject to the review of the school board. *See Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) ("[T]he unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983.").

Superintendent Siegel identifies incidents which should be reported under the mandatory reporting policy. He testified in his deposition that he did not understand the reports of the portable toilet incident involving C.K.M. and David M. to indicate that a sexual assault occurred and thus did not report the incident as would be required under the mandatory reporting policy. If the deliberate choice to follow this course of action was unconstrained, Superintendent Siegel could be a final policymaker, and this choice could amount to a policy of inaction to support imposing *Monell* liability on the District. While Superintendent Seigel is not a final policymaker under state law, a factfinder must determine if he was delegated policymaking authority by the school board.

Summary judgment is therefore denied as to Plaintiffs' due process § 1983 claim against the District.

    **b.**    **Equal Protection**

Plaintiffs argue that the District's policy on sexual harassment and its application to C.K.M. violates her equal protection rights because the policy requires students to object to the sexual harassment, which CKM cannot do because of her cognitive disabilities.[3] The District argues that it cannot be held liable for the implementation of the

---

[3] Plaintiffs rely on their expert Judith Billings's declaration to support their argument that the District's sexual harassment policy is unconstitutional. The District objects to the declaration,

policy because the policy "is not an express policy that if followed would clearly result in the violation of C.K.M.'s constitutional rights." Dkt. 46 at 11. The Court disagrees.

Plaintiffs' claims clearly implicate the District's policy on sexual harassment, which is an expressly adopted policy. The District can be held liable for a policy that simply does not permit students with cognitive disabilities to be sexually harassed; the policy only covers some students and not others (specifically those who cannot vocally articulate their objection), necessarily discriminating against a protected class. *See, e.g., Lee*, 250 F.3d at 686–87 (explaining that individuals with cognitive disabilities do not constitute a suspect class for equal protection purposes but that laws discriminating against such individuals must pass rational basis scrutiny). Plaintiffs have established that this stage the District's policy of sexual harassment was not enforced to protect C.K.M. because she could not object due to her cognitive disabilities, seemingly violating her constitutional rights to equal protection without rational basis.

Summary judgment is therefore denied as to Plaintiffs' equal protection claim against the District.

**C.     Negligence Claim**

Plaintiffs bring a negligence claim against the District, alleging that the District breached its duty to protect C.K.M. and that it failed to properly train its employees. The Court previously granted summary judgment "to the extent that Plaintiffs are bringing an

---

arguing that an expert cannot testify about a legal conclusion or the ultimate legal issue in a case. *See* Dkt. 58 at 10. The Court need not rely on Billings's declaration to reach its conclusion here but is persuaded that Billings's opinion improperly makes legal conclusions.

1 | independent claim for negligent training and supervision" and requested supplemental
2 | briefing on proximate cause and damages for the negligent failure to protect claim. Dkt.
3 | 51 at 35. Plaintiffs argue that there is sufficient evidence on proximate cause to survive
4 | summary judgment, *see* Dkt. 54 at 13–19, while Defendants argue that there is no
5 | credible evidence to establish proximate cause, *see* Dkt. 56 at 2–6.

6 |      Plaintiffs argue that "[b]ut for Defendants['] repeated failure to monitor,
7 | supervise[,] and ultimately stop David from continually sexually touching and abusing
8 | C.K.M.," C.K.M. would not have suffered the harm that she did. Dkt. 54 at 13. Plaintiffs
9 | further argue that the District's duty included preventing David M. from causing harm
10 | and that David M.'s actions were entirely foreseeable. They provide Judith Billing's
11 | expert testimony, Defendant Miller's deposition testimony, and Dr. Gilbert Kliman's
12 | expert report to support their arguments.

13 |      Defendants have filed objections to Billings' declaration and supplemental
14 | opinion, Dkt. 58, but the Court need not rely on her declaration to reach its conclusion
15 | that Plaintiffs have provided sufficient evidence on proximate cause and damages to
16 | survive summary judgment. Miller testified that if she had been informed about David
17 | M.'s history of sexual harassment and assault prior to his transfer into the District, she
18 | would have changed the way she supervised David M. Dkt. 55, Exhibit 4, Deposition of
19 | Heidi Miller, at 114:23–115:18; 118:13–119:7. This evidence supports Plaintiffs'
20 | argument that, but for the District's negligence in failing to protect C.K.M. from David
21 | M.'s known threat, C.K.M. would not have been injured.

22 |

Furthermore, Dr. Kliman opines that C.K.M. "has suffered significant and lasting psychiatric damages as a direct and proximate result of the sexual assault." *Id.*, Exhibit 5, at 75–76. He reached this opinion based on conversations with C.K.M. and her family. Defendants urge the Court to reject the accuracy of any statements made by C.K.M. because of her intellectual disability. But,

> at this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31 (citations omitted); *see also McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004) ("[I]t is axiomatic that disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment."). Whether C.K.M.'s statements are credible and, therefore, whether Dr. Kliman's expert report and opinion are credible is ultimately a question for the jury.

Plaintiffs have established at this stage a claim for negligent failure to protect against the District. Defendants' motion for summary judgment is therefore denied as to this issue.

**D.     Plaintiffs L.K.M. and J.M.'s Individual Claims**

Finally, Plaintiff Parents request damages pursuant to RCW 4.24.010 and bring their own § 1983 substantive due process claim. The Court requested supplemental briefing regarding the applicable statute of limitations for the damages claim and regarding whether they are bringing their own § 1983 claim or whether the claim is derivative of C.K.M.'s § 1983 claim.

### 1. RCW 4.24.010

While RCW 4.24.010 allows a parent to recover damages for the injury of their child, the statute "neither includes nor expressly incorporates a statute of limitations." *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 33 (2016). Plaintiffs argue that Parent Plaintiffs' claim is derivative of C.K.M.'s state law claims, which tolled until C.K.M. turned 18 years old, and is therefore timely. Dkt. 54 at 19–20. Defendants, on the other hand, argue that the tolling provision is person-specific and does not apply to the Parent Plaintiffs' claim. Dkt. 56 at 6–7.

Negligence claims and actions based on childhood sexual abuse both have a three-year statute of limitations. RCW 4.16.080 (negligence); RCW 4.16.340 (childhood sexual abuse). If these claims accrue while a person is under the age of eighteen or is disabled, Washington law allows for the claims to toll until the person reaches competency. RCW 4.16.190. Plaintiffs argue that, because C.K.M.'s claims tolled until she turned eighteen, the Parent Plaintiffs' claim for damages tolled as well.

The Washington State Court of Appeals has recently addressed whether a parent's claim for damages under RCW 4.24.010 tolls with the minor child's claim. *See Curtin v. City of East Wenatchee*, 12 Wn. App. 2d 218 (2020), *rev. denied* 195 Wn.2d 1022 (2020). In *Curtin*, the plaintiff parents sought compensation for damages sustained as a result of an injury to their child pursuant to RCW 4.24.010. The parties similarly disputed whether the minor tolling provision (i.e., RCW 4.16.190) applied to the parents' claim for damages. The trial court held that the parents' claim was subject to a three-year statute of limitations and was not subject to tolling. The court of appeals affirmed, holding that

"[t]he tolling provision of RCW 4.16.190 is 'person' specific in that it only applies to those who meet that statute's criteria." *Id.* at 224. It reached this conclusion, in part, because the statute of limitations under RCW 4.16.190 tolls until the injured person attains competency "to safeguard the rights of a minor child or disabled person whose parent or guardian fails to take timely action on their behalf." *Id.* at 225. Under this logic, the court held that the parents' claim under RCW 4.24.010 did not toll with their child's claim and was not timely filed.

While Plaintiff Parents argue the principles of *Fast v. Kennewick*, 187 Wn.2d at 33, and *Kelly v. Centennial Contractors*, 169 Wn.2d 381, 387 (2010), result in their claims being derivative and subject to tolling, *Curtin* controls. When there is no controlling Washington Supreme Court precedent on issues of state law, the Court is bound to apply the law as it believes the Washington Supreme Court would under the circumstances. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "If there be no decision by [the state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

Therefore, the Court concludes that Plaintiff Parents' claim for damages under RCW 4.24.010 is not subject to the minor tolling provision and is subject to the three-year statute of limitations pursuant to RCW 4.16.080. *Curtin*, 12 Wn. App. 2d at 224 ("Requiring parents, but not minor children, to abide by the general limitations period of RCW 4.16.080(2) is consistent with the objectives of the statutory limitations scheme.").

Defendants thus argue that Plaintiff Parents' claim is time barred because they assert the claim accrued by Fall 2013 and suit was not filed until December 6, 2016. A statute of limitations begins to run when the underlying claim accrues—that is, when a party has discovered or should have discovered the facts to support a cause of action. *Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998). Plaintiff J.M. testified at his deposition that he became aware of C.K.M.'s alleged sexual assault when he was contacted by Plaintiffs' counsel around Fall 2013. Dkt. 40-12 at 14:2–14. And Plaintiff L.K.M. testified in her deposition that she had heard about the alleged inappropriate touching before Plaintiffs' counsel first contacted her. Dkt. 40-11 at 101:21–102:2. Plaintiffs do not refute these assertions. While "a non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment[,]" "the opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2)).

It is therefore undisputed for the purposes of this motion that Plaintiff Parents were aware of C.K.M.'s alleged injury by Fall 2013; their claims thus accrued, at the very

least, by Fall 2013. The Court agrees with Defendants that the statute of limitations for Plaintiff Parents' claim for damages pursuant to RCW 4.24.010 ran by at least Fall 2016. Because Plaintiffs did not file suit until December 2016, their claim for damages is untimely.

Summary judgment is therefore granted, and Plaintiffs Parents' claim for damages under RCW 4.24.010 is dismissed with prejudice.

**2.    18 U.S.C. § 1983**

Plaintiff Parents additionally argue that they may assert Fourteenth Amendment Substantive Due Process claims pursuant to 42 U.S.C. § 1983 if they are deprived of their liberty interest in the companionship of their child through official conduct.

In deciding claims under § 1983, federal courts borrow state statutes of limitations on a statewide basis. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005) ("42 U.S.C. § 1988 is 'a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.'"). The Washington statute applicable to § 1983 claims provides for a three-year statute of limitations. *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) ("In 'considering § 1983 claims [we] should borrow the general or residual statute for personal injury actions.' In Washington, that would be three years." (quoting *Owens v. Okure*, 488 U.S. 235, 250 (1989); other internal citations omitted)). Furthermore, state law governs questions regarding the tolling of statute of limitations for § 1983 claims. *See Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003).

Parent Plaintiffs again reiterate their argument that their claims are not time barred because they are derivative of C.K.M.'s claims. *See* Dkt. 54 at 23–24. And Defendants

assert that the statute of limitations has also run on their § 1983 claim. For the reasons fully articulated above, the Court agrees with Defendants. Parent Plaintiffs became aware of the alleged abuse in 2013 but did not file suit until 2016. Their § 1983 claim, like their state law claim for damages, is untimely.

Summary judgment is therefore granted, and Parent Plaintiffs' § 1983 claim is dismissed with prejudice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 39, is **GRANTED in part** and **DENIED in part**.

Dated this 19th day of April, 2021.

BENJAMIN H. SETTLE
United States District Judge