1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**THE HONORABLE BENJAMIN H. SETTLE**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

L.K.M., individually, and on behalf of her
daughter, C.K.M., and J.M.,

                    Plaintiffs,

     vs.

BETHEL SCHOOL DISTRICT, et al.,

                    Defendants.

NO. 3:18-cv-05345-BHS

**PLAINTIFF C.K.M.'S TRIAL BRIEF**

## I.    INTRODUCTION

Plaintiff C.K.M., by and through her attorneys of record, respectfully submits this trial brief to address the factual, legal, and evidentiary issues presented by this case.

As the Court knows, this case arises from transfer of a Sexually Aggressive Youth ("SAY") special needs student, David M., from the Clover Park School District ("Clover Park") to the Bethel School District ("Bethel") in or about 2011-2012.  Plaintiff submits, based upon documentation from both Clover Park and Bethel, evidence from police reports and juvenile court records, and testimony of Bethel agents and employees from the Superintendent Tom Seigel down to teachers and paraeducators, that Bethel knew David M. had repeatedly, sexually assaulted children and was threat to other special needs students. Bethel also knew that David M. needed a one-to-one supervisor at all times to keep him from sexually assaulting and abusing other children.

PLAINTIFF C.K.M.'s TRIAL BRIEF



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

Further, this case is about what happened to one of David M.'s special needs classmates, C.K.M., when Bethel arbitrarily and unilaterally removed David M's one-to-one supervisor from his Individual Education Plan ("IEP") without notice and in violation of the plan and IEP regulations.  Beginning in or about the start of the 2012-2013 school year, David M. sexually abused and harassed a lower functioning special needs classmate, C.K.M., in the Bethel High School special education class.  Special Education teacher Heidi Miller, along with paraeducators assigned to her classroom, kept a running log of David M.'s abuse and harassment of C.K.M.  In spite of David M.'s behavioral log, no one from Bethel intervened to protect C.K.M. or her classmates from David M.'s sexually predatory behaviors.

The Court has narrowed the focus of the suit through its orders on dispositive motions. Plaintiff's claims now rest solely with C.K.M. against Bethel alleging the following causes of action:  1) Violation of C.K.M.'s Due Process and Equal Protection rights under 42 U.S.C. § 1983 – *Monell* Claims; 2) Violation of C.K.M.'s rights under Title IX; 3) Violation of Washington's Law Against Discrimination (WLAD) and 4) Negligence.  Trial is set to begin October 5, 2021.  Plaintiff and her counsel are ready for a spirited presentation of the evidence in this important case with ramifications for all students with special needs in the Bethel School District.

## II.    FACTUAL BACKGROUND

The Court is acquainted with the basic factual outline of events but, for purposes of evaluating some of the liability and damages issues, the following facts are significant.

### A.    David M.'s Prior Violence and Sexual Assaults at Schools in the Clover Park School District.

On October 20, 2010, David M., a Clover Park special needs student, was left unattended and subsequently punched a developmentally disabled student in the jaw at Lochburn Middle School in Lakewood, Washington. Weeks later, on November 5, 2010,



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

David M. was again without supervision and was caught masturbating another developmentally disabled student in a bathroom at Lochburn.

Then, on or about January 28, 2011, David M. vaginally raped a young special needs girl named C.F. in a different bathroom at Lochburn when David was yet again left unattended.

After the violent rape, Clover Park transferred David M. less than two miles away, to Hudtloff Middle School, also in Lakewood.  But just weeks after the transfer, David M. targeted a three-year-old child on a Clover Park elementary school playground near his home. David M. was caught sexually molesting the girl by Clover Park employees and police were called.

Less than a year after that assault, on September 14, 2011, David M. sexually assaulted another child by placing his penis in the buttocks of a special needs student named A.D. in a bathroom at Hudtloff when David was again left unsupervised at school.

**B.      David M. Transfers to Bethel.**

After the sexual assault at Hudtloff Middle School, David M. was expelled by Clover Park.  Before the expulsion was processed, David's mother withdrew him from Clover Park and transferred him to Cedarcrest Junior High School in the Bethel School District.

On November 10, 2011, Clover Park faxed school records for David M. to Bethel. These documents included a "Manifestation Determination" from February 2, 2011, regarding the sexual assault at Lochburn Middle School. The description of the behavior that resulted in the disciplinary action against David M. was:

> David took a female classmate by the hand and led her into the boys bathroom outside the cafeteria at lunch time.  While in the bathroom he pulled down her pants and underwear.  According to statements the other student told David to stop two separate times.  David inappropriately touched the other student. David was emergency expelled for exceptional misconduct.

PLAINTIFF C.K.M.'s TRIAL BRIEF



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Another document sent to Bethel was a Clover Park Manifestation Determination from September 26, 2011, which described the sexual assault by David M. at Hudtloff:

> [The boy] said that he had his pants down to urinate and David had walked into the bathroom. David told him to come over to the wall and urinate on the wall, which he did. According to statements from the other student and his mother, David then asked the student, "do you want to be raped?" He stood behind the other student and pulled down his own pants, and there was inappropriate physical touch. The other student said that he was embarrassed and didn't like that, so he left the bathroom. When he got home after school, he told his mother, and they returned to school to report this. The police were contacted. David was emergency expelled from school.

After receiving this documentation about David M.'s sexually predatory past, Bethel's special education department, Special Services, put together an Evaluation Summary for David M. based upon his past test records, his Individualized Education Plan or IEP and his disciplinary records. In that document, Bethel notes multiple times how David must be watched closely because of his past sexual misconduct. In addition to the passage above, indicating that David M. was involved in at least two prior incidents of sexually inappropriate conduct at school, Special Services also created a document called a Prior Written Notice on December 9, 2011. That written notice, created in order to develop a new IEP, specifically stated:

> David has a 1:1 paraeducator to monitor his behavior due to sexual misconduct in the past. He is not able to go to the bathroom without letting an adult know and he is not to be left alone with peers unsupervised (i.e. locker room).

**C.     Bethel's Policy Makers, including Defendants Siegel, Maxwell, Nelson and Jane Doe 1, Lori Haugen, Get Unequivocal Notice from Clover Park's Attorney of David M.'s Past History of Sexual Violence and Notice that David M. Must Have One-on-one Supervision at All Times.**

Not only did Bethel receive voluminous written materials explaining David M.'s dangerous, sexually predatory past with other children, Bethel administrators also received verbal warnings about David M.'s dangerousness from general counsel to both Bethel and Clover Park, attorney William Coats.

PLAINTIFF C.K.M.'s TRIAL BRIEF



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

In the preparation of this lawsuit, Plaintiffs filed tort claim forms as required by statute, with both Clover Park and Bethel regarding their respective information related to the transfer by David M. from Clover Park to Bethel.  In a formal response to the plaintiffs' tort claim form, Clover Park, through its then-counsel, Michael Patterson, wrote a letter explaining that Clover Park disclosed David M.'s sexually predatory past to Bethel at or near the time of David's expulsion from Clover Park and his subsequent enrollment in Bethel. That letter describes how Mr. Coats, who was Clover Park's attorney, and who litigated the lawsuit involving the January 28, 2011 rape of Clover Park student C.F. in Pierce County Superior Court, met with officials from Bethel before or contemporaneously to David M.'s transfer from Clover Park to Bethel. At that meeting, Mr. Coats provided documentation to Bethel about David M.'s past history of sexual assaults and "personally spoke" with Bethel officials, including Bethel Superintendent Tom Siegel, "to provide background information about [David M.]."

In addition to Superintendent Siegel personally speaking with Attorney Coats about David M., Defendants' own school expert, Janet Barry, acknowledges that Robert Maxwell, Bethel's Executive Director of Special Services, also spoke with Mr. Coats about David M.'s sexually predatory past and the need for constant one-on-one supervision.  Maxwell then had a conversation with Special Services Director Lori Haugen about David M. entering Bethel from Clover Park. Maxwell went to Education Specialist Megan Nelson to develop David M.'s IEP supervision plan.

Less than three months later, on February 2, 2012, Bethel received even more detailed information about David M.'s sexually predatory history.  The Pierce County Juvenile Court sent an Offense Notification to Cedarcrest Junior High School notifying the school's principal that David M. had entered into a diversion agreement for the offense of Assault Fourth Degree with Sexual Motivation and Communicating with a Minor for Immoral Purposes for the incident occurring at Hudtloff Middle School on September 14, 2011.

PLAINTIFF C.K.M.'s TRIAL BRIEF



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

**D.      Bethel Removes David M.'s One-on-One Supervision Without any Process and In Violation of David M.'s IEP.**

Upon David M.'s transfer to Cedarcrest Middle School in November 2011, Bethel's IEP evaluation team required David M. to have a one-on-one paraeducator with him at all times to ensure that he interacted safely with his fellow classmates:

> David is distractible and can be busy in the classroom. He needs cues to stay on task and in his seat. David has had problems with appropriate sexual boundaries at a previous school. He is to use the restroom in our classroom only…David also needs work on learning appropriate personal space boundaries…David is under close supervision to help him learn appropriate boundaries at this time. David is provided a ***one on one paraeducator due to sexual misconduct. The paraeducator's primary purpose is to monitor David's interactions with peers to make sure there are no boundary violations***.

(emphasis added). Accordingly, during David M.'s time at Cedarcrest, with constant close supervision by a one-on-one paraeducator, Bethel claims that David M. did not have any serious behavior issues for the remainder of that school year.

However, as David M. moved up from junior high to a new classroom at Bethel High School during the following 2012/2013 school year, Bethel, and the individual defendants, including but not limited to Special Services Director Lori Haugen, Education Specialist Megan Nelson and Bethel High School Vice Principal Tom Gifford unilaterally removed David M.'s one-on-one paraeducator, in direct violation with his IEP.  Education Specialist Nelson, one of the Bethel supervisors responsible for overseeing the special education department, agreed that not having a one-on-one paraeducator for David M. violated his IEP.

> Q      And you would agree with me that David not having a one to one was a violation of his IEP, right?
>
> MR. KEARNS:   Object to the form.
>
> THE WITNESS:  Correct.

Although there is no written record to support it, Nelson claims there was an IEP team decision made by talking with a teacher, Nelson herself and administration in the district office to remove David M.'s one-on-one supervision.  Nelson admits, however, there is no



**COCHRAN DOUGLAS**
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

paperwork memorializing a meeting, and she has no recollection if David M.'s parents were involved, as required by law.

Q    And was it your recommendation to remove the one-to-one paraeducator from David M[.]?

A    Yes.

Q    Was that ever memorialized in an IEP?

A    No.

Q    Why not?

A    Process was not followed. It slipped.

Q    When you say "it slipped," what do you mean?

A    We didn't do the proper paperwork to follow the decision.

\*            \*            \*

Q    Were David M[.]'s parents, Christina C[.] or the father, notified that the one on one was being removed from David?

A    I don't know.

Q    That would have been a necessary individual, correct, to inform?

A    Correct.

Q    Was it taken into consideration that David had been - he had been implicated in two prior sexual instances within the Clover Park School District?

MR. KEARNS:· Object to the form.

THE WITNESS:· I can't recall if that was part of the conversation or not.

\*            \*            \*

[Q]    Was there any discussion when the paraeducator one on one for David M[.] was being removed that David's success at Cedarcrest was in fact because he had a one-on-one monitor?

A    I can't recall if that was part of the conversation.

Q    It should have been, correct?

MR. KEARNS:· Object to the form.

PLAINTIFF C.K.M.'s TRIAL BRIEF



COCHRAN DOUGLAS
Attorneys at Law
4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

1    THE WITNESS:· Sure.

2    Q      (By Mr. Cochran)· Because the IEP specifically said he needs a one on
3           one to prevent him abusing sexual boundaries and impacting other
            students, right?

4    A      Yes.

5    Lori Haugen, Executive Director of Special Services, and the former Director of

6    Special Services, was also involved in the decision violation of David's IEP by removing the

7    one-on-one.   She testified that David M. was required to have one-on-one supervision,

8    because he was deemed a sexually aggressive youth, or SAY.  She also testified that there was

9    no IEP meeting prior to removing the one-on-one paraeducator supervision from David M's

10   IEP.

11   [Q]    There was no IEP meeting held with regard to the one-on-one
            supervision of David M[.], correct?

12   A      To remove the one-on-one, is that what you're asking?

13   Q      Yes.

14   A      Correct.

15                          *              *              *

16   Q      And the fact that there was no meeting held for David M[.] with regard
17          to the removal of one-on-one supervision in or about the year 2012 was
            a violation of the Bethel School District's policies with regard to IEPs,
18          correct?

19   MR. KEARNS:· Object to the form.· Go ahead.

20   THE WITNESS:· Correct.

21   Director Haugen further admitted that the purpose of David M.'s one-on-one was "to

22   make sure he was appropriate and to keep kids safe." Haugen further acknowledged that it

23   was below the standard of care with regard to the creation or alteration of a student's IEP to

24   fail to have a meeting of the IEP team and without documentation.

25   **E.      David M. Sexually Assaults C.K.M. in Bethel High School Bathroom.**

26



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

On October 5, 2012, David M[.] and C.K.M. were freshman in Bethel High School's special education classroom, the Independent Learning Center ("ILC") taught by teacher Heidi Miller.  During a physical education period, David was left unattended on the high school football field.  David M[.] was left unattended even though (1) the Bethel School District knew about David's history of sexual assaults, and (2) that David M.'s IEP required him to be in line-of-sight and to have a 1:1 paraeducator with him at all times at Bethel High School.  On the football field, David led C.K.M. to a portable toilet out near the track and sexually assaulted Plaintiff C.K.M. in the porta-potty.  David M. and C.K.M. were eventually found by paraeducators in the porta-potty.  Despite the wealth of documentation about David's past sexual misconduct, Vice Principal Gifford emergency expelled not only David, but also C.K.M., accusing them both of **lewd and/or vulgar conduct**.

C.K.M.'s mother, L.K.M. states that she received a call from the school district regarding the incident at the porta potty with David M. This was not first time L.K.M. had heard about David M.  The very first time L.K.M. heard about abuse by David M. was from the school itself.  Bethel High School employees told L.K.M. they had sent her daughter, C.K.M., out of the classroom with David M. to dispose of their lunch garbage. David M. came back without C.K.M. approximately 3-5 minutes later. Teachers went to find C.K.M. and found her sitting behind the garbage can crying. C.K.M. said David M. had touched her. Bethel High School employees told L.K.M. that C.K.M. was holding her breasts while saying that David M. had touched her.  School employees told L.K.M. that C.K.M. was "too sexual" toward David M. C.K.M. told L.K.M. later that same night the David M. had touched her breasts all over.

Shortly after the first sexual assault behind the garbage can, representatives from Bethel High School called L.K.M. again about another incident involving David M. and C.K.M. L.K.M. brought an advocate from P.A.V.E. (Partnerships for Action, Voices for Empowerment) with her to meet school officials/employees. School officials/employees told

PLAINTIFF C.K.M.'s TRIAL BRIEF



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

L.K.M. and the P.A.V.E. advocate, Vanessa Lewis, that C.K.M. allegedly "snuck" into a porta-potty with David M. L.K.M. asked how that was possible because C.K.M. was known to be a flight risk, or runner, and should had a school employee with line-of-sight supervision or, in the alternative, C.K.M. was to be wearing an orange vest for visibility purposes. At that same meeting, Tom Gifford contended that although he was not there on the football field, no sexual abuse could have happened because of the allegedly short amount of time that David M. and C.K.M. were in the porta-potty.

However, when L.K.M.'s mother asked C.K.M. about the incident later and re-assured C.K.M. that she was not in trouble and that L.K.M. just needed to know what happened. L.K.M. asked C.K.M. to show her what had happened with David M. C.K.M. pulled down her pants and said David M. put his fingers 'in here', as she was pointing to her vagina. C.K.M. then pulled up her shirt and said David M. had licked her breasts."

## F.     Bethel School District Knew David M. Was Targeting and Assaulting C.K.M. for Weeks Before October 5, 2012

Unbeknownst to the plaintiffs, Bethel had already been keeping a daily log of David M.'s sexually predatory behavior. The on-going behavior logs kept by teachers and staff describe David M. sexually harassing, targeting and/or sexually abusing C.K.M. and other special needs students in the classroom in the weeks leading up to the October 5, 2012 incident on the football field. The logs also described a disturbing increase in sexualized behavior by C.K.M., subsequent to David M.'s continual harassing and abuse. The logs state, in relevant part:

> 9/13/12 – David and [C.K.M.] showing interest in sitting next to each other. Had to separate (sic) they were too close. Attempted to hold hands on way to bus. They were instructed this was not appropriate

> 9/21/12 – David tried to kiss [C.K.M.] during break time behind book shelf. They were directed that this is not OK at school.

> 9/26/12 – [C.K.M.] tried to remove her shirt during class (sic) was directed back to restroom. I told her that was something we do in private not public. David tried sitting right next to [C.K.M.] during 4th period touching (leg to



COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

leg).  I told him that was too close.  David got upset and moved his chair across the room in protest.

9/28/12 – David and [C.K.M.] redirected several times today because of being to (sic) close to each other.  LOS for duration of day.

**G.      Bethel Continued to Knowingly Allow David M. to Sexually Harass and Assault C.K.M. after October 5, 2012**

Even after David M. sexually assaulted C.K.M. in a portable bathroom on October 5, 2012, the District continued to allow David to prey on C.K.M. and other special needs children in the classroom.  Classroom teacher Heidi Miller and paraeducators in the ILC kept notes in a notebook about David M.'s sexually harassing behaviors over the course of the year.

10/6/12 – David followed [C.K.M.] into classroom bathroom, immediately removed by staff.  Discussion of appropriate behavior and bathroom rules was discussed with each student.  During P.E. incident resulting in suspension occurred.

10/15/12 – David trying his hardest to be with [C.K.M.] by himself.

10/23/12 – David attempted to get [C.K.M.] alone behind book case after lunch.  Was redirected to move into sight.  Attempted to signal [C.K.M.] into bathroom after specialist students were separated.  During 6th period students were separated.

10/25/12 – Sat next to [C.K.M.] during 3rd period.  Was asked to move away, due to his constant moving closer to her.

10/26/12 – Wanted to sit next to [C.K.M.] during lunch, 4th period.  Was redirected to move away.  No sub.

11/1/12 – No sub today.  Tried to get behind bookcase with [C.K.M.] today was directed to other side of portable.  During PE attempted to get away from other students and staff to meet [C.K.M.] out by portapotty (sic), was intercepted.

11/9/12 – At beginning of 3rd, David had TP behind bookcase and Ms. B caught them.  David [sic] reply was, "Why can't I be with my friend[?] I was just trying to tell her to stop bossing MA around."  On way back from lunch, CKM was saying to another student m… f…  We had her eat by herself.  David ate his lunch before we could get back to the room.  I moved David away from TP which irritated him.  Then he was trying to get close to [CKM] and got irritated at me when I asked him to move away and not be in her eyesight.  Every time I moved away [David] her was circling CKM and TP repeatedly[] and got upset when he was asked to leave or move.  Fourth period TA wasn't here and when I was going to leave for lunch, he started to move in

COCHRAN
DOUGLAS
**Attorneys at Law**

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

1   again so I just stayed to help the sub... Also during 6th period, more than once
2   asked him to move away from JA.  Way to [sic] close to him.

    11-14-[12] – [CKM] went into bathroom after telling David she was going in
3   and left the door cracked open and pulled her pants down.  (He was outside b-
    room door.)

4   11/15/[12] – Tried several times to touch each other & were blowing kisses to
5   each other on the bed

6   12-7-12 – David had a good morning during P.E.  We went into the big gym
    and he kept calling all the girls from the other class over the other P.E. teacher
7   had to come over and tell him to leave his students alone.  After that he did
    stop but when he thought I was not looking he tried to leave the gym.  I had
8   him come back and he played basketball for the [remainder] of class.

9   12-10-12 – Right after 4th hr. [CKM] went to the bathroom and David followed
    her in there.  I told him that that behavior was not appropriate and that he
10  would need to stay by my side for the 5th hr.

11  12-12-[12] – [CKM] was going in bathroom, leaving door open & pulling
    down her pants.  David was nearby & went over & turned on light in bathroom
12  & closed the door.  [CKM] was asking "Where are my pads"  Went to other
    bathroom left door open & pulled down her pants.

13
    12/14/12 – After 5th period today on the way back to class David and slowed
14  down to [end] of the line and he and [C.K.M.] kissed each other.

15  3/6/[13] – David focusing on [CKM]

16  3/7[13] – David focusing on [CKM].  We did division.  He refused to do it at
    first and erased the problem, however did well after we got started.  David was
17  allowed to sit by [CKM] w/ space between but took advantage of the situation
    and continued to move closer and talking to her like she was a toddler.  [CKM]
18  was asked to move and David was told he could not be around [CKM] at all
    since he pushed it too far and didn't seem to understand when too much is too
19  much.  David said he didn't understand and that he wasn't doing anything
    wrong.  He said he didn't have an attitude but was glaring and rolling eyes.  He
20  came over later and said he was sorry but he didn't know why and said he
    hadn't done anything wrong.  On way to PE I told him Mrs. Morgan & I talked
21  – No [CKM] as it always end up inappropriate - he argued – Explained there
    are some things some shouldn't do (such as parties) as it leads to problems and
22  they need to stay apart.  [CKM] will be directed away from him as well.  When
    we got to PE walking around he immediately start to try to walk w/ [CKM] He
23  was redirected and [CKM] was asked to walk w/ staff.  He continued to have
    an attitude....

24
    4/9[/13] – [CKM] has been home for two days.  David started to focus upon [--
25  ].  Talking to her, trying to rub against her, sit close to her.  I had a talk with
    him to explain that I could see it was making her uncomfortable.  He was
26  redirected & I kept him from sitting by her.



COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

4/10[/13] – [CKM] back.  David had to be redirected several times then spoken to alone....

5/1, 2, 3[/13] – David focused on [CKM], argumentative

5/15[/13] – David appeared to try to sneak to the other side and into the bathroom with [CKM].  He was watched very closely and told to stay on this side with me.  He denied anything without being told he had been doing anything inappropriate.  He got upset, but complied.

5/29/13 – During PE, David was trying to walk with [C.K.M.].  They were separated.  David had a lot of attitude and talked back when he was asked not to walk with her.  [C.K.M.] then told Mrs. Morgan that David told her he wanted to fuck her.  She then told Mrs. Barker she told David she wanted to fuck him.  I took David aside and told him what she said.  He denied saying that.  I explained that may be so, but asked who would people believe if she told someone else.  He seemed confused at first, then realized with further explanation that they would not believe him, they believe her, especially with his history.  David looked very concerned.  I explained that I believed him.  We realized that [C.K.M.] sometimes made up stories, however that would not matter it would still be her who they would listen to.  I explained that this was the reason he and [C.K.M.] were kept apart.  We were not trying to prevent him from having fun or friends, but keeping them safe, out of trouble and making good choices because we cared about him.  I asked him to look back and think about how many times in the past in which he and [C.K.M.] have done something together or they have tried to do something together and it has turned out good or something bad hasn't happened.  He said it always ends up bad.  I agreed.  I reinforced that was why he needed to stay away from [C.K.M.] and he needed to make good, safe choices.  He nodded in agreement and we walked together for a while.  I again reinforced that we cared for him and wanted him to be safe and help him make good, appropriate choices.

The daily notations of David M.'s constant sexual harassment of C.K.M. and the other special needs' students were kept by faculty and staff and shared with Vice Principal Gifford, Special Services Director Lori Haugen and Education Specialist Megan Nelson.

**H.     Bethel's Sexual Harassment Policy Was Not Enforced Because CKM Never Objected to David M.'s Sexual Harassment as "Unwanted".**

Bethel's sexual harassment policy number 3206 provides:

3.  Student to Student Harassment

    a.  For the purpose of this policy, student to student sexual harassment is defined as any **unwanted** sexual behavior, such as sexually explicit gestures with hands or through body movements, sexual teasing or jokes, pressure for dates, sexually demeaning comments, deliberate touching or pinching, cornering or blocking a student's movement, pulling at clothing, attempts to fondle or kiss, pressure for sex or any other conduct designed to embarrass or



to intimidate whenever such harassment occurs on school property…. (Sexual assault and/or rape is also a form of sexual harassment and is a criminal act that will be reported to law enforcement immediately for investigation and possible prosecution.)

      b.  A substantiated charge against a student shall subject the student to disciplinary actions including **verbal warnings, reprimand, counseling, suspension, or expulsion**, consistent with the Student Disciplinary Code.

According to the defendants, the policy's requirement that sexual harassment be "unwanted," precluded or otherwise prevented Bethel from protecting C.K.M. from David M.'s constant efforts to sexually abuse and harass her.  Vice Principal Gifford testified about the policy's requirement in his deposition:

Q      [A]re you familiar with the Bethel School District's policies and procedures with regard to sexual harassment?

A      I couldn't quote them to you.

Q      But are you generally familiar with sexual harassment with regard to student on student?

A      I believe so.

Q      Would you characterize David's continuing actions with regard to [C.K.M.] as sexual harassment?

MR. MOBERG: Are we talking about after October 5th only?

MR. COCHRAN: Right.

A      I would not characterize it as sexual harassment.  Inappropriate behavior, yes.  Sexual harassment has to have -- the other person has to be actively -- or the person has to object to what's going on for it to be harassment. Again, I believe it more of an age -- a cognitive inability of the students to know necessarily what they are doing, but the physical reality of the hormones driving them is definitely there.

Q      (By Mr. Cochran) So was it your -- was it your opinion, based on the information that you had, that [C.K.M. was not objecting to these sexually inappropriate behaviors of David M[.]?

A      I don't know that [C.K.M.] knew better. I don't know that [C.K.M.] knew better.

PLAINTIFF C.K.M.'s TRIAL BRIEF



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

Defendant Lori Haugen, who was Bethel's Director of Special Services at the relevant time, concurred with Defendant Gifford's opinion that the Sexual Harassment Policy requires the harassment to be unwanted, which C.K.M. was unable to communicate due to her cognitive impairments.

> Q   Would you agree with me, based on the entries that we've seen so far, that the attempt to get too close in an inappropriate manner as described in the log, the attempt to go into the bathroom with [C.K.M.], the successful going into the porta-potty with [C.K.M.] would meet the definition of student-to-student -- or I should say [C.K.M.] -- that would meet the definition of student-to-student harassment?
>
> …
>
> A   Yeah, I -- I don't know if it would meet the standard of harassment.
>
> Q   (By Mr. Cochran)· And what about at least the interactions that you've seen so far would lead you to believe that that did not meet the policy as written with regard to sexual harassment?
>
> A   I would go back to the 13th and just saying that they both were interested.   So I -- I think when you're looking at harassment, it's unwanted.

Remarkably, even Defendant's school expert, Janet Barry, agrees that a severely, disabled child with cognitive challenges like C.K.M. cannot be sexually harassed within the school district's policies.

> Q   Did you, within the context of your report, examine at all the idea of sexual harassment?
>
> A   I recall the words "sexual harassment" having been used, I think in the complaint.   I didn't view the behavior between David M[.] and [C.K.M.] as sexual harassment because her profoundly limited cognitive abilities didn't permit her to object.   She didn't object. She didn't know how to object.   It's just not-- it's not a concept that one applies in the context of the ILC the way you would with ordinary eighth or ninth grade students.
>
> My memory is that Tom Gifford made this point as well, as the person responsible for discipline in the school, that he viewed it as certainly inappropriate—I mean, we can all identify boundary invasions, and we



see David as persistent and willful in regard to these things, and we know it needs to be stopped, but it doesn't really meet the definition of sexual harassment in the universe of students not so cognitively impaired.

Q       So are you testifying that because of her inability to say, "No," based on her cognitive level, that [C.K.M.] could not be sexually harassed?

MR. MOBERG:· Objection; misstates testimony, is argumentative.  You can answer.

A       I am saying that the label doesn't apply.  The behavior is unacceptable, the school district is responsible for intervening and curtailing it, but really the label doesn't apply.  Reports can't be made in the way they can in a general education environment.

Plaintiff's educational expert, former State Superintendent of Public Instruction Judith Billings, opines that Bethel's sexual harassment policy, as written and as applied, discriminates against students with disabilities like C.K.M. that do not have the capacity to object to sexual harassment as "unwanted" unlike typically functioning students.

Billings further opines that the by denying C.K.M. access to the sexual harassment policy based on her inability to "object", C.K.M. lost the protections afforded by the policy to David M.'s sexually harassing actions including suspension and expulsion of the harasser.

## I.     David Transferred to Spanaway Lake High School – And He Sexually Abused Another Child.

After a full year of sexual harassment and sexual abuse, David M. was finally moved from Bethel High School to a similar program at Spanaway Lake High School at the end of the 2012-13 school year.  Bethel cannot explain why the transfer did not take place earlier.

Tragically, on March 20, 2014, David M. was accused molesting a first-grade student on the playground of Evergreen Elementary.   According to the Bethel's Assistant Superintendent for Elementary Education, David put his hand down the pants of the seven-year-old girl.  David was arrested and jailed.  The Assistant Superintendent had the School Resource Officer "trespass David from all district property," and Lori Haugen was tasked with finding an out-of-district alternative school for David M.



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

**J.      CKM Has Consistently Disclosed that "David Touched Me".**

Despite the defendants' refrain to the contrary in their motion for summary judgment, C.K.M. has consistently stated that David M. did indeed sexually assault her.

1.      <u>CKM Disclosed David's Abuse to her Guidance Counselor at New High School</u>

C.K.M. and her family moved from Bethel to Hawthorne, Nevada, in October of 2014. C.K.M. enrolled in Mineral County High School.  As a part of the high school's socialization effort for students with special needs, C.K.M. had lunch in the cafeteria on a regular basis with high school guidance counselor John Gavin.  In a perpetuation deposition, Mr. Gavin described at length how C.K.M. often talked about "a David that touched her inappropriately."

[A]     After she had said it probably about two weeks, every once in awhile she would say David, don't touch me there. David, don't touch me there and she would touch her vagina, and I mentioned it to the father one day and he said oh, that's the boy's name that she alleged had the sexual misconduct with in her previous school.

Q     And she said David, don't touch me there?

A     Yes.

Q     Okay. And then you mentioned that she pointed – where did she point?

A     She went down and felt herself between the legs.

Q     And how did she do that, with her hand or --

A     Yes.

Q     And did she do that on a regular basis?

A     She probably did it once or twice a week.

Q     Other than David, don't touch me there did she say anything else about David?

A     Just David, you're not supposed to do that. David's bad, David -- what's going to happen to David[?]

                    *              *              *

PLAINTIFF C.K.M.'s TRIAL BRIEF

**COCHRAN DOUGLAS**
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

Q    At any point did you prompt or say anything about David to [C.K.M.] prior to her making the disclosure that David had touched her?

A    Never, no.

Q    And how long before you had lunch had [C.K.M.] been in school each day?

A    Three hours.

Q    Do you know in that three-hour period if anyone else had prompted [C.K.M.] to say anything about David?

A    I don't know that, but I doubt it.

2.    <u>CKM Disclosed Significant Details of David's Sexual Abuse to Plaintiffs' Damages Expert, Child Psychiatrist Gilbert Kliman, M.D.</u>

Plaintiffs' expert psychiatrist is Gilbert Kliman, M.D.  Dr. Kliman has decades of experience with disabled children like C.K.M.  Dr. Kliman will testify at trial that he relied upon C.K.M.'s multiple disclosures of David's assault in formulating his opinions:

> At around the three-minute mark of the interview, [C.K.M.]'s affect turned more serious as she spontaneously announced, "David was in the bathroom with me." [C.K.M.] appeared anxious and disoriented as she looked around and asked, "Where is David ... What happened to him?" After I confirmed that David lives far away, that I had not met David, and he was not here, [C.K.M.] added, "***David touched me.***" While beforehand, she had been active and expressive, after mentioning David, [C.K.M.] became motorically still. Though attention span was generally limited, at this time in the interview, she held a steady gaze and focused all attention on the examiner. (CKM w GK, 3:45)

> When I noted that the incident with David was a long time ago, [C.K.M.] repeated, ***"David touched me. He got whooped." Pointing to her crotch area, she added, "David touched me there."*** (CKM w GK, 5:00) Moments later, alluding to what I believe are David's genitals, ***she stated that he "touched me with his poowie." She then stated, "David kissed me in the bathroom." When asked again about David touching her, she pointed genitals and stated, "Right here (her crotch) with his poowie." When asked if she meant "peewee," she responded, "Poowie."***
>
> *        *        *

> It is also my professional opinion, with a reasonable degree of psychiatric certainty that the Plaintiff suffered multiple incidents of assault by the special needs classmate.

(emphasis added).

3.    <u>In her Deposition, C.K.M. Indicated that David M. Touched her Vagina.</u>



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

Due to her significant challenges, C.K.M.'s deposition was admittedly difficult. However, C.K.M., like she had previously, indicated that David touched her vagina.

Q    Do you remember talking a couple of months ago with Dr. Vandenbelt in Reno?

A    Yeah.

Q    Do you remember that?

A    Yeah.

Q    Do you remember telling him the places where David touched you?

A    Yeah.

Q    Can you tell Mr. Moberg and me where David touched you?

A    Where David touched me?

Q    Yes, can you tell us where David touched you like you told Dr. Vandenbelt?

A    He touched my hair.

Q    Okay.  And you're pointing towards your vagina; right?

A    Yeah.

## III.    LEGAL AND EVIDENTIARY ISSUES

In two previous opinions, the Court narrowed the issues which will be presented to the jury as follows:

### A.  42 U.S.C. § 1983: Violation of the Due Process and Equal Protection Clauses as to the Bethel School District – *Monell* Claims.

To assert a claim against the school district under § 1983, C.K.M. must show that Bethel's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *Monell v. Dep't of Soc. Servs*., 436 U.S. 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

The Ninth Circuit recognizes four categories of "official municipal policy" to establish liability under *Monell*: (1) an action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action, or delegation of an action to an employee, by a subordinate employee's action by a final policymaker; and (4) failure to adequately supervise, monitor, or train employees with deliberate indifference to the consequences. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002); *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999); *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (local government may be liable for constitutional violations resulting from failure to supervise, monitor, or train where the inadequacy amounts to deliberate indifference to the rights of others). "Moreover, a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *accord Mortimer v. Baca*, 594 F.3d 714, 716 (9th Cir. 2010); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). Bethel's actions here, which were taken pursuant to official policy as defined by the Ninth Circuit, directly resulted in the Fourteenth Amendment constitutional violations suffered by C.K.M.

      1.    <u>Bethel's Policy Makers Had Actual Knowledge of David M's Dangerousness but Removed David's One-on-one Supervision and Then Did Nothing to Ensure C.K.M. and other Special Needs Students Were Protected</u>

"Although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir.2006); *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Wood*, 879 F.2d at


COCHRAN DOUGLAS
Attorneys at Law
4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

589–90.[1]   The "state-created danger" theory is a potential source of **both** individual and municipal liability, and is viewed as an exception to the rule that municipal liability may not be based on the acts of private individuals. *Huffman v. City of Los Angeles*, 147 F.3d 1054, 1059 (9th Cir.1998); *L.W. v. Grubbs*, 92 F.3d 894 (9th Cir.1996). In order to succeed on a claim based under this theory, a plaintiff must show "that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *Grubbs*, 92 F.3d at 900.

The record here shows that Bethel's Policy Makers, including Superintendent Tom Siegel and former Executive Director of Special Services Robert Maxwell received direct notice and had actual knowledge of David M.'s dangerousness from legal counsel for Clover Park.  These policy makers knew that David had been accused and had admitted multiple instances of sexual misconduct with special needs classmates and other children.  In addition, Siegel and Maxwell were specifically warned that David M. needed one-on-one supervision in order to keep his classmates and himself free from further sexual violence. Maxwell then, according to Director of Special Services Lori Haugen, went on to tell Haugen and Education Specialist Megan Nelson about David M. entering the district and his past history of sexual predation of other children.  Despite this direct knowledge of David M's dangerousness, Haugen and Nelson removed the one-on-one supervision from David M. without convening an IEP meeting as required and without making the requisite notation of the change in the IEP itself.  As Haugen admitted, the reason there was not documentation of an IEP meeting discussing removing the one-on-one supervision for David M. at Bethel was because the meeting never happened.

At trial, Plaintiff will show how Superintendent Seigel was delegated policymaking authority by the School Board through designating the implementation of the policies to him

---

[1] Plaintiffs do not contend that a special relationship existed.  *Patel v. Kent Sch. Dist*. 648 F.3d 965, 973 (9th Cir.2011) ("Compulsory school attendance and in loco parentis status do not create 'custody' under the strict standard of *DeShaney*.")



**COCHRAN DOUGLAS**
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

making him a final policymaker.  Further, Plaintiff will show how Seigel and others knew about not only the October 5, 2012 porta potty incident, but other incidents of sexual abuse and failed to report any of this to law enforcement or Child Protective Services as required by law.

> 2.    Bethel's Peer-to-Peer Sexual Harassment Policy Discriminated Against C.K.M. By Requiring Her to Object to David M.'s Actions as Unwanted

Further, Bethel's sexual harassment policy provided that a student found sexually harassing another student would be subject to varying forms of discipline, including but not limited to suspension and expulsion.  Yet, despite the assault in the porta potty, and then the continued targeting of C.K.M. over the course of the school year as logged by teacher Heidi Miller and the paraprofessionals working in her classroom, no formal action was taken against David M.  Instead, as Defendant's school expert put it, David was "redirected."  Predictably, redirections were only a temporary measure and David M. was quickly back to harassing C.K.M.

District administrators, faculty and staff never invoked the sexual harassment policy which would have protected C.K.M. from further harassment, because C.K.M. couldn't object to the sexual assault and the constant attempts at sexual contact due to her limited cognitive abilities; a clear violation of The Americans with Disabilities Act of 1990 or ADA (42 U.S.C. § 12101.   Plaintiff's school expert Judith Billings opines that this is the essence of an unlawfully discriminatory policy against a student with special needs.

**B.  Violation of Title IX by the Bethel School District.**

Title IX provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). The Supreme Court has held that a school district receiving federal funds may be liable for damages under Title IX when one student sexually harasses another. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839

COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

(1999). To establish such liability, a plaintiff must show: 1) she suffered sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to deprive him of access to the educational opportunities or benefits provided by the school; 2) the funding recipient had actual knowledge of the sexual harassment; and 3) the funding recipient was deliberately indifferent to the harassment. *Id*. at 650; *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 739–40 (9th Cir.2000) (applying *Davis* standard).

     1.    <u>The sexual assault of CKM in the portable toilet and the log of persistent attempts by David M. to be in "inappropriate places and attempting sexual contact" with C.K.M. was severe, pervasive, and objectively offensive.</u>

Sexual harassment is actionable under Title IX where it is "so severe, pervasive and objectively offensive, [that it] undermines and detracts from the victims' educational experience, [such] that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 651, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

> It is not necessary ... to show physical exclusion to demonstrate that a student has been deprived of an educational opportunity by the actions of another student. [*Davis*, 526 U.S.] at 651, 119 S.Ct. 1661. Rather, the harassment must have a "concrete, negative effect" on the victim's education or access to school-related resources. *Id*. at 654, 119 S.Ct. 1661. Examples of a negative impact on access may include dropping grades, *id*. at 634, 119 S.Ct. 1661, being diagnosed with behavioral and/or anxiety disorders, *Theno v. Tonganoxie Unified School District No. 464*, 377 F. Supp. 2d 952, 968 (D. Kan. 1005), becoming homebound or hospitalized due to harassment, *see Murrell v. School District No. 1, Denver, Colorado*, 186 F.3d 1238, 1248-49 (10th Cir. 1999), physical violence, *see Vance v. Spencer County Public School District*, 231 F.3d 253, 259 (6th Cir. 2000), or sexual assault, *see Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007).

*Roe v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1028 (E.D. Cal. 2009).  Here, Plaintiffs' expert child psychiatrist, Dr. Kliman, has diagnosed C.K.M. as suffering "significant and lasting psychiatric damages as a direct and proximate result of the sexual assault."  Furthermore, Plaintiffs' school expert, Judith Billings, has testified that C.K.M. lost

PLAINTIFF C.K.M.'s TRIAL BRIEF

COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

out on educational opportunities as a result of the continual, unabated sexual harassment by David M., as logged by Bethel.

    2.   <u>Through knowledge of David M.'s past history of sexual predation and the special education classroom log, Bethel had actual knowledge of sexual harassment by David M.</u>

Neither the Ninth Circuit nor the Supreme Court has resolved the precise contours of the "actual notice" component of a Title IX claim. *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1032 (D. Nev. 2004); *Douglas v. Stalmach*, 2016 WL 4479538 (D. Nev. 2016). A majority of the courts have found the standard is met "when an appropriate school official has actual knowledge of a substantial risk of abuse to students based on prior complaints." *See e.g.*, *Doe A. v. Green*, 298 at 1032 (quoting *Johnson v. Galen Health Institutes, Inc.*, 267 F.Supp.2d. 679, 688 (W.D.Ky.2003)). *See e.g.*, *Massey v. Akron City Board of Educ.*, 82 F.Supp.2d 735, 744 (N.D.Ohio 2000) (holding that "[f]or actual notice to exist, an agent of the school must be aware of facts that indicate a likelihood of discrimination."); *Frederick v. Simpson College*, 149 F.Supp.2d 826, 838 (S.D.Iowa 2001) (deciding that actual notice requires "actual notice . . . that [the bus driver] was at risk of sexually harassing a student").

Furthermore, a complaint of harassment need not be undisputed or uncorroborated before it can be considered to fairly alert the school district of the potential for sexual harassment. *See Gordon v. Ottumwa Cmty. School Dist.*, 115 F. Supp.2d 1077, 1082 (S.D.Iowa 2000). "In sexual harassment cases, it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation." *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 966 (9th Cir.2010). In other words, the "test is whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Roe v. Gustine Unified Sch. Dist.*, 678 F.Supp.2d 1008, 1030 (E.D.Cal.2009).



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

Here, there is no dispute that prior to the sexual assault of C.K.M. in the porta potty at Bethel High School on October 5, 2012, Superintendent Siegel and Executive Director Maxwell had actual knowledge through direct conversations with Clover Park's legal counsel, that David M. was a serious risk to students in the Bethel School District.  There is also no doubt that Director Haugen and Specialist Nelson also had actual knowledge of David's dangerousness via conversations with Maxwell and the written records that accompanied David M. from Clover Park.  There is also no question that Haugen, Nelson, Vice Principal Gifford and teacher Heidi Miller all knew about David M.'s on-going sexual harassment of C.K.M. and other students in the special needs classroom.

3. <u>Bethel's actions were clearly unreasonable under the circumstances and therefore the district was deliberately indifferent under Title IX</u>

Having had actual knowledge, the next question is whether Defendants acted with deliberate indifference.  Deliberate indifference exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."[2] *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir.2000); *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).  In Title IX damage actions, "the test is whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based."  *Roe ex rel. Callahan*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009).

Here, Bethel had ample notice from the Superintendent down to the classroom educators that David M. was a danger to sexually prey on other students, and especially students with special needs. At a bare minimum, Special Services Director Haugen, Education Specialist Nelson, Vice Principal Gifford, and Special Education Teacher Heidi Miller knew

---

[2] The Ninth Circuit has a history of leaving the question of deliberate indifference to the jury.  *See Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir.1992) ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury.") (citing *Davis v. Mason County*, 927 F.2d 1473, 1482 (9th Cir.1991)).

PLAINTIFF C.K.M.'s TRIAL BRIEF



COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

that David M. was sexually harassing C.K.M. routinely through David M.'s behavioral log. Yet, despite this actual knowledge of David M.'s dangerousness, no one at Bethel put any procedures into place to ensure that David M. was supervised with a one-on-one at all times during the 2012-13 school year.  Worse still Haugen and Nelson removed the only procedural safeguard in place, the IEP requirement, without having the requisite IEP team meeting and without even noting the change in the IEP document itself.  And finally, Haugen, Nelson, Gifford, and Miller all knew that David M. was sexually harassing and abusing C.K.M. on a regular basis via the classroom log but did nothing to remediate or prevent the harassment from continuing throughout the school year.  Under these circumstances, Bethel's actions were clearly unreasonable in light of what was known about David M.'s harassment of C.K.M., and therefore deliberately indifferent in violation of Title IX.

### C. Violation of Washington's Law Against Discrimination (WLAD) by the Bethel School District.

Bethel treated C.K.M. and presumably all other students with cognitive disabilities differently that they do typically functioning with regard to the district's sexual harassment policy.  As Bethel High School's former Vice Principal Tom Gifford, Bethel's Education Special Megan Nelson and even Defendant's expert Janet Barry put it, the "label" of sexual harassment doesn't apply to kids who cannot express that the harassment is unwanted.

Plaintiffs' education expert Judith Billings disagrees and opines that Bethel's disparate treatment of disabled students like C.K.M. from typically functioning students deprived C.K.M of the remedies to stop David M.'s sexual harassment.

> Without defining David M.'s actions as sexual harassment, educators and administrators were left to "redirect" David each time he was actively harassing C.K.M.  Under Bethel's policy, a typically functioning student in the same situation would have been protected by a mandatory investigation of the charges and remedial action up to and including suspension or expulsion of the sexual harasser.  C.K.M. was denied the protection of the sexual harassment policy simply because her cognitive disabilities wouldn't allow her to object to David M's sexually harassing behaviors.



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

In addition, Plaintiff's cognitive disability was a significant motivating factor for David M.'s sexual harassment, abuse, and assault.  Our Supreme Court has adopted the same "substantial factor" standards for WLAD public accommodation claims as WLAD workplace discrimination claims under RCW 49.40.180.  *Fell*, 128 Wn.2d at 640.  Under RCW 49.60.180, "substantial factor" does not mean that a plaintiff's protected characteristic was the "determining factor," "sole factor," or "but for" cause of workplace discrimination.  *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014) (citing *Mackay v. Acorn Custom Cabinetry, Inc.,* 127 Wn.2d 302, 310-11, 898 P.2d 284 (1995)).  Instead, a plaintiff must show only that their protected characteristic "was a significant motivating factor" in the discriminatory action.  *Scrivener*, 181 Wn.2d at 444 (citing *Mackay*, 127 Wn.2d at 311).

Finally, the sexual harassment, abuse, and assault Plaintiff suffered proximate caused damages for which Bethel is liable.  WLAD allows a plaintiff to recover "actual damages," defined by our Supreme Court as "a remedy for full compensatory damages, excluding only nominal, exemplary or punitive damages," that are "proximately caused by the wrongful action, resulting directly from the violation of RCW 49.60."  *Blaney v. Int'l Ass'n of Machinists And Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 216, 87 P.3d 757 (2004) (internal quotations omitted).  CKM was discriminated against because she could not object to David M.'s actions as unwanted, per the school district's express policy.  Under Washington law, C.K.M.'s disability cannot lawfully prevent her from the protections of Washington's Law Against Discrimination.

### D.  Negligence as to the Bethel School District.

1.     Bethel Owed a Duty of Reasonable Care to Protect Plaintiff from Harm that Falls Within the General Field of Danger.

It is well-established in Washington "that a school district has an enhanced and solemn duty to protect minor students in its care."  *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005); *accord McLeod v. Grant County Sch. Dist. No. 128,* 42 Wn.2d 316, 319 (1953); *J.N. v. Bellingham Sch. Dist.*, 74 Wn. App. 49, 57, 871 P.2d 1106

PLAINTIFF C.K.M.'s TRIAL BRIEF

COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

(1994); *Peck v. Siau*, 65 Wn. App. 285, 293, 827 P.2d 1108, *rev. denied*, 120 Wn.2d 1005 (1992).   This duty includes anticipating dangers and taking precautions.   *Carabba v. Anacortes School Dist. No. 103*, 72 Wn.2d 939, 955, 435 P.2d 936 (1967).  In executing their duties, Washington holds school districts to a heightened "reasonableness" standard of care in light of their employees' particularized training and experience.  *J.N.*, 74 Wn. App. at 57, 61.

The focus of the duty's scope is not on a specific harm or action that occurred; rather the focus is on the "general field of danger": "The pertinent inquiry is not whether the actual harm was a particular kind which was expectable.  Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated."  *McLeod*, 42 Wn.2d at 321.  Thus, the duty "is to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers."  *McLeod*, 42 Wn.2d at 320.

The notice in this case is insurmountable, and the evidence paints a clear picture: When David M. is left unattended, he sexually assaults special needs children in bathrooms. Bethel's district administrators had actual knowledge of David M.'s dangerousness, as relayed by Bethel's general counsel upon David M.'s abrupt transfer from Clover Park.  Upon entering CJH (Cedarcrest Junior High School), the Clover Park School District informed CJH that David had been involved in two incidents of inappropriate sexual conduct that involved law enforcement.  The second incident occured (sic) just prior to the parent moving to the Bethel District.  David is being closely monitored at CJH.   The same Evaluation Summary warned, "David needs to be watched closely because of his past incidents of sexual misbehavior (from former schools)."

Despite Bethel's policy maker's knowing about David M.'s dangerousness, they failed to tell those employees responsible for keeping David M. from abusing other students and responsible for keeping CKM safe.  David M.'s special education teacher at Bethel High School, Heidi Miller, has testified that she had never seen the "Offense Notification"

**COCHRAN DOUGLAS**
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

document regarding David M.'s pretrial diversion for Fourth Degree Assault with Sexual motivation.  She further testified that she did not know about the criminal nature of David M.'s past sexual assaults despite the notice requirements of under RCW 13.04.155.  The former Vice Principal Gifford also testified that he did not have specific information regarding David M.'s past sexual assaults.

Bethel knew that David M. was a sexual predator who was a safety threat to his classmates. Not only was the district provided this information by its general counsel William Coats, but it was provided the same information in the materials supplied by Clover Park School District when David M. transferred to Bethel in the middle of the 2011/2012 school year.

Without possessing the requisite information and/or resources necessary to fully protect the students in her class, Heidi Miller and her two support paraeducators, Sharon Dye and Shari Baker, were understaffed and left to treat and supervise David M. as just another student.  It quickly became apparent to Heidi Miller, however, that David M. posed a safety threat to his fellow classmates, C.K.M. in particular. As a result, Miller began documenting their interactions. She also began requesting that David M. be provided a full-time one on one paraeducator, pursuant to his IEP.

2.      Bethel School District Breached the Duty of Care Owed to Plaintiff C.K.M.

As detailed above, supervisors in Bethel's Special Services removed David M.'s one-on-one paraeducator supervisor without having an IEP meeting and without even making a notation on the IEP document.  This violation of David M.'s IEP meant that for all intents and purposes, David M. had no supervision at all.   As a result, when David M. walked outside of his classroom for P.E. on October 5, 2012, the only supervision plan in place to protect Bethel High School students from David M. was to have two paraeducators maintain eyesight on him, all while maintaining eyesight on thirteen (13) other special needs students, while



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

navigating a football field and track with upwards of 65 other general education students running around.

Predictably, David M. located C.K.M. and then went outside the line of sight of any staff member, for *a minimum* of 30 seconds -- Plaintiffs argue that David M. and C.K.M. were missing for a much longer period.  After finally being found together in a locked porta-potty, both students were separated from one another and C.K.M. was sent back to the classroom. At no point following this incident was C.K.M. asked by faculty, staff, or administrators if she had been sexually assaulted in the porta-potty.  When finally asked by her mother if she had been assaulted, C.K.M. disclosed that David M. inserted his fingers into her vagina and licked her nipples. Following the October 5, 2012 assault, Bethel continued to allow David M. to access C.K.M. on a regularly ongoing basis. These interactions lead to additional sexual assaults and harassing behaviors.

3.   Bethel breach of its duty of care owed to Plaintiff C.K.M. proximately caused C.K.M.'s damages.

In a state law negligence claim, proximate cause consists of cause in fact and legal causation. *Behla v. R.J. Jung, LLC*, 11 Wn. App. 2d 329, 334, 453 P.3d 729 (2019). The first prong of proximate cause is cause in fact.  *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998). "Cause in fact concerns 'but for' causation, events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred." *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999). Cause in fact refers to the physical connection between an act and an injury. *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985).

"[T]he defendant's actions are the cause in fact of plaintiff's injuries if the defendant's wrongdoing produced the injuries complained of and any intervening cause was reasonably foreseeable." *McCoy v. American Suzuki Motor Corp.*, 136 Wn.2d 350, 358, 961 P.2d 952 (1995). In general, the cause in fact element of proximate cause is normally a question for the



COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

jury unless the facts are not in dispute. *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016); *Behla*, 11 Wn. App. 2d at 338. ("Thus, when addressing purported 'speculative' claims, the trial court should give the benefit of the doubt as to causation to the plaintiff and only dismiss a claim to the extent the court can decide that all reasonable people would conclude causation to be speculative."). Here, as discussed previously in Plaintiffs' responsive pleadings and supporting documentation, Defendants' negligence was a cause in fact of Plaintiffs' damages. But for Defendants repeated failures to monitor, supervise and ultimately to stop David from continually sexually touching and abusing C.K.M. (and her classmates), C.K.M. would not have suffered the harm and damages she did as a student in the Bethel School District. Furthermore, Defendants cannot argue that the causative chain was broken by the "intervening cause" of David's actions, because the district's duty included *preventing David from causing harm*, in addition to its duty to protect C.K.M. David's acts were entirely foreseeable, and thus caused by Defendants' multiple breaches of the standard of care.

For the same reasons, Defendants' negligence was the legal cause of Plaintiffs' damages. Legal causation involves "a determination of whether liability should attach as a matter of law" based on "mixed considerations of logic, common sense, justice, policy, and precedent". *Hartley*, 103 Wn.2d at 779. The question of legal causation "is so intertwined with the question of duty that the former can be answered by addressing the latter." *Taggart v. State*, 118 Wn.2d 195, 226, 822 P.2d 243 (1992).

The overwhelming evidence in this case is that Bethel breached its duty of care and that the breach proximately and directly caused harm and continuing damages to C.K.M. As Plaintiffs' expert, former State Superintendent Judith Billings, stated that if "at a minimum, David M.'s IEP had been followed and a paraeducator had been assigned to David M., the sexual assault of C.K.M. would not have occurred." Further, Billings opined,



COCHRAN DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

> [I]f the Bethel School District had not violated David M.'s IEP, and if it had
> not placed David M. in C.K.M.'s classroom without one-on-one supervision,
> David M.'s ongoing sexual harassment of C.K.M., would also have been
> prevented all together. Over the course of the entire school year including but
> not limited to the porta-potty assault, David M. was documented by his
> teachers and paraeducators as incessantly sexually harassing C.K.M.

Also, the documents in Bethel's possession and the meeting with attorney William Coats demonstrate that the district had considerable, detailed knowledge of David's sexually predatory past in other schools. Despite this documentation and knowledge, Bethel failed to reasonably supervise David and failed to reasonably protect C.K.M. from harm. Administrators at all levels, knew that David was an active danger to C.K.M., specifically, and to all the children in Bethel High School's special needs classroom.

Bethel's own personnel further support the causation of C.K.M.'s negligence claim. Special education teacher Heidi Miller testified that if she knew of the specifics of David's past history of peer abuse, she not only would have a different supervision plan in effect, but she wouldn't have even allowed David in the same class with C.K.M. Despite being notified of David M's long, documented history of sexually aggressive behaviors towards special needs students, Bethel School District administrators failed to fully inform the individuals specifically assigned to monitor David of his potential threat to the safety of his fellow classmates. According to Ms. Miller, if the district had apprised her of David's sexual proclivities prior to C.K.M.'s assault, something could have been done to minimize David's threat potential and prevent further abuse from occurring:

Q     Before today, had you ever been made aware of [the September 14, 2011] incident involving David M within the Clover Park School District?

A     No.

Q     If you had been made aware of the incident which is described in Exhibit 6 that David came up to another student in the bathroom, asked "Do you want to be raped?" that he stood behind the other student and pulled his own pants down and apparently stuck his penis in the boy's buttocks --



1    A      Mm-hm.

2    Q      -- would that have informed your overall supervision of David M?

3                          *                *                *

4    Q      … [I]f you had received this document, which is a manifestation
5           determination, would it have been informative as to your plan for
            supervising David M?

6    A      Yes.

7    Q      Would it have changed the way that you supervised David M?

8    A      Yes.

9    Q      Would it have affected your recommendation as to whether David M.
10          should be in your special needs classroom with [C.K.M.]?

10   A      Yes.

11   Q      What would your recommendation have been if you had made -- been
12          made aware of this information which is contained within Exhibit 6?

13   A      I would -- I don't know what my recommendation would be, but I
14          would -- I would believe that he would need to be in an environment
            where there was fewer students, where there was more supervision.[3]

15                         *                *                *
     Q      Do you know Lochburn Middle School?
16
17   A      I've been there, yeah.

18   Q      And it's a part of the Clover Park School District?

19   A      Yes.

20   Q      There was a meeting with David, and I'll represent to you that it's David
21          M. [Exhibit 7] says, "He doesn't know who 4th person in the bathroom
            was but would recognize them. David and" -- and I'll represent to you
22          that the name of this young lady was also C." David and C. holding
            hands as they went into the bathroom. David went up to C. and grabbed
23          her hand and took her into the boys bathroom. David states he pulled
            down her pants and underwear. David states he then pulled down his
24          pants and underwear. He states while her pants were down. David
            states he touched his privates to her privates while their pants were
25          down. States she told him to stop as he was taking her in the
            bathroom."

26
     ─────────────────
     [3] *Id.* at Ex. 4, (Deposition of Heidi Miller) 115:25-116:18.

     PLAINTIFF C.K.M.'s TRIAL BRIEF



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

The next page, "She told him stop when he started to pull down her pants. When she tried to pull her pants back up David states he pulled them back down. David states he was trying to have sex with her. David states before this happened told" -- and it's another student -- "he was going to have sex with her. David said he pushed his penis in her a little and she was saying stop while he was doing this. Afterward David said she went running into the lunchroom crying. He states he then went into the lunchroom and said 'I'm sorry.'"

Before today, were you ever made aware of this incident which occurred on January 28th of 2011 at Lochburn Middle School?

A    No.

Q    If you had been made aware of the circumstances behind this incident regarding David M, would it have changed your supervision plan for David M as a student within your special needs classroom?

A    Yes.

Q    Would it have changed your recommendation one way or another as to whether David M belonged in your special needs classroom with [C.K.M.]?

A    Yes.

Q    Would you have made the recommendation to the special education department at the Bethel School District not to have David in the same classroom as [C.K.M.]?

A    Probably.

Q    On a more likely than not basis, is that --

A    Yeah. Yes.

Plaintiff's expert psychiatrist, Dr. Gilbert Kliman, through his extensive interviews with C.K.M. and her family, has opined that based upon his forensic examination, C.K.M. was persistently pursued and sexually assaulted by sexually predatory classmate, David M. Dr. Kliman further opines that "C.K.M. has suffered significant and lasting psychiatric damages as a direct and proximate result of the sexual assault."

## IV.    CONCLUSION

Plaintiff looks forward to presenting her case when it is set to begin on October 5, 2021.

PLAINTIFF C.K.M.'s TRIAL BRIEF



COCHRAN
DOUGLAS
Attorneys at Law

4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com

RESPECTFULLY SUBMITTED this 14th day of September, 2021.

COCHRAN DOUGLAS, PLLC

By    /s/ Loren A. Cochran
        Loren A. Cochran, WSBA No. 32773
        loren@cochrandouglas.com
        Nicholas B. Douglas, WSBA No. 49786
        cole@cochrandouglas.com
        Attorneys for Plaintiffs

PFAU COCHRAN VERTETIS AMALA, PLLC

By    /s/ Thomas B. Vertetis
        Thomas B. Vertetis, WSBA No. 29805
        tom@pcvalaw.com
        William T. McClure, WSBA No. 54622
        wmcclure@pcvalaw.com
        Attorneys for Plaintiffs



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## DECLARATION OF SERVICE

I, **Kim Snyder**, hereby declare under penalty of perjury under the laws of the State of Washington that I am employed at Cochran Douglas PLLC and that on today's date, I served the foregoing via the Court's Electronic Service System and vial electronic mail by directing delivery to the following individuals:

> Jerry  J. Moberg
> James Baker
> Moberg Rathbone Kearns, P.S.
> 124 Third Avenue SW
> Ephrata, WA  98823
> jmoberg@mrklawgroup.com
> jbaker@mrklawgroup.com
> mrathbone@mrklawgroup.com
> dseverin@mrklawgroup.com
>
> Attorneys for Defendants

DATED this 14th day of September, 2021.

/s/ Kim Snyder
Kim Snyder, Legal Assistant



4826 Tacoma Mall Blvd., Suite C
Tacoma, WA 98409
www.cochrandouglas.com